UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WAYNE HARDIN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil No. 1:09-cv-00496-JAW |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) |
| | ) |
| | ) |
| Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration found that Wayne Hardin, 36 years old as of the date of alleged onset of disability, has severe impairments consisting of degenerative disk disease, cardiac disease, obesity, and monofixation syndrome, but that he retains the functional capacity to perform substantial gainful activity, including both past relevant work and other specified jobs existing in significant numbers in the national economy, resulting in a denial of Hardin's application for disability benefits under Title II and Title XVI of the Social Security Act. Hardin commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 2, 4, and 5 of the sequential evaluation process. I recommend that the Court affirm.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales,

402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

The Commissioner's final decision is the May 7, 2009,decision of the Administrative Law Judge (R. 7-19) because the Decision Review Board did not complete its review during the time allowed. (R. 1.)

The Administrative Law Judge found that Mr. Hardin meets the insured status of Title II through December 31, 2006, and has not engaged in substantial gainful activity since July 2, 2006, the date of alleged onset of disability, thereby checking off Step 1 of the sequential evaluation process. (Findings 1 & 2, R. 9.) The Judge next found that Hardin's alleged mental impairments are non-severe for purposes of Step 2, but that the following severe physical impairments are present: degenerative disk disease, cardiac disease, obesity, and a visual impairment of monofixation syndrome. (Finding 3, R. 9.) Hardin suggests that the Judge erred at Step 2 by exercising lay judgment about medical evidence rather than by relying on expert opinion. (Statement of Errors at 3-4, Doc. No. 10.) At Step 3, the Judge found that this combination of impairments would not meet or equal any listing within the Commissioner's Listing of Impairments. Hardin does not press a contrary argument here. At Step 4, the Judge made a residual functional capacity finding that Hardin could engage in light work having a sit/stand option, subject to

certain other, less limiting, restrictions. (Finding 5, R. 13.) From there, the Judge, relying on vocational expert testimony, found for purposes of Step 4 and Step 5 that Hardin could still engage in his past work as a cashier and that he could also engage in other occupations, including "personal care assistant," "document preparer," and "ticket seller." (Findings 6 & 10, R. 16-18.) Hardin argues that the Judge erred in regard to his residual functional capacity by failing to account for certain consulting expert opinion and that this error undermines the Judge's findings concerning ability to perform the jobs in question. (Statement of Errors at 4-9.) Hardin further argues that the Judge and the vocational expert failed to keep their discussion of certain potential occupations consistent with the Department of Labor's Dictionary of Occupational Titles. (Id. at 10-12.) The Commissioner conceded at oral argument that the record will not support two of the jobs at issue, personal care assistant and ticket seller.

For reasons that follow, I recommend that the Administrative Law Judge's decision be affirmed and that judgment enter for the Commissioner. Hardin fails to mount a proper challenge to the step 2 finding and the record contains substantial evidence in support of the Judge's step 4 findings on residual functional capacity as well as his step 4 and step 5 findings concerning the occupations of cashier and document preparer.

A.  Step 2

In his statement of errors, Hardin asserts that, "beginning at Step 2, the ALJ made his disability-related determinations in the absence of supporting medical evidence" and "based only on his lay judgment." (Statement of Errors at 3-4.) However, he makes this

3

argument under a heading captioned: "The RFC and Step 5 findings are seriously flawed." (Id. at 3.) Hardin never indicates in his Statement of Errors that the Judge erroneously omitted an impairment at Step 2. Moreover, at oral argument, plaintiff's counsel described this case as a "Step 4/Step 5 case." Based on this presentation, it can only be said that Hardin does not allege an independent error concerning the omission of any particular impairment at Step 2 (e.g., diabetes).

**B.     Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his or her residual functional capacity does not permit the performance of past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). As a component of proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003).

The Judge's residual functional capacity finding is based on the existence of degenerative disk disease secondary to a broken tail bone and evidence of "damage" to two thoracic vertebrae (R. 14), as well as cardiovascular atherosclerotic disease that

includes symptoms of angina, hypertension, and peripheral edema. (R. 9, 14.) Obesity and a lack of visual depth perception further impinge on Hardin's functional capacity. (R. 9.) The Judge's RFC finding that is material for purposes of discussing the allegations of error are as follows:

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally; to lift and/or carry ten pounds frequently; to stand and/or walk for one-hour periods at a time for about six hours out of an eight-hour work day with normal breaks; to sit for one-hour periods at a time for about six hours out of an eight-hour work day with normal breaks; and to push and/or pull within the weight tolerances described for lifting and carrying. The claimant can reach occasionally overhead and frequently in all other directions.

(Finding 5, R. 13.) Hardin assigns error to the Judge's RFC finding because he says the Judge failed to account for two significant restrictions identified by the consulting physicians.[1]

### 1. *The "two-hour blocks" note*

The first allegedly overlooked restriction is found in the Physical Residual Functional Capacity Assessment made by Disability Determination Services consulting physician Richard T. Chamberlain, M.D. The Commissioner's Physical Residual Functional Capacity Assessment Form (Form SSA-4734-BK) is in two parts. In part I,

---

[1] In his Statement of Errors, Hardin states that another step 4 error occurred because the Judge "rejected the opinion of Plaintiff's treating physician without adequate reasons for doing so," without identifying the physician or supportive medical records, and without briefing the issue further. (Statement of Errors at 4.) At oral argument, plaintiff's counsel argued that the opinion of Christopher Buck, M.D., should have received controlling weight, referencing exhibit 18F (R. 806-809). The parties debated whether this kind of presentation results in waiver. Rather than imposing a hard-line waiver rule, the issue is better treated as another scenario in which a plaintiff fails with the argument that a treating physician's opinion is automatically entitled to controlling weight. The Judge did not fail to discuss Dr. Buck's opinion and gave adequate reasons for rejecting it. (R. 16.) Parenthetically, even if Dr. Buck's assessment had been credited to restrict Hardin to sedentary work, the vocational expert testified, for purposes of step 5, that the document preparer occupation would remain a suitable position for someone having a sedentary job restriction and Hardin's other functional limitations. (R. 61-62.)

the form instructs the medical expert to express a reasoned judgment, based on all evidence in the file, about the claimant's exertional, postural, manipulative, visual, communicative, and environmental limitations, including the total number of hours in a workday that the claimant could be expected to stand and/or walk or sit "*with normal breaks*." (R. 509.) In part II, the form instructs the expert to discuss whether alleged symptoms not assessed in part I of the form have a medically determinable basis, whether the degree of limitation alleged is disproportionate to the expected severity, and whether the allegations are consistent with the total medical and nonmedical evidence. (R. 513.) In the second part of his RFC Assessment, Dr. Chamberlain offered a note related to Hardin's allegation that his chest and back pain were increasing in severity. Dr. Chamberlain wrote: "Based on the evidence available the client should be able to work in two hour blocks of time within the parameters of this RFC." (Id.)

According to Hardin, Dr. Chamberlain's two-hour block note amounts to a further restriction on his functional capacity because it means he must have regularly scheduled work breaks of unspecified duration every two hours on the button. (Statement of Errors at 5.) Hardin alleges error because the Judge failed to address this note in his decision, and failed to relay it to the vocational expert at the administrative hearing. (Id., citing R. 16.) At oral argument, I asked Hardin's counsel about the origin of the "two-hour block" concept, which crops up with some regularity in these cases. According to plaintiff's counsel, this is a term of art from a bygone era when one could safely assume that laborers (at least in union jobs) would receive a break every two hours. According to counsel, in this day and age the Commissioner should not be able to ignore an expert

opinion that a break is needed every two hours to account for functional limitations because it may prove material to the actual occupational base, particularly at Step 5 where the Commissioner bears the burden of proof.

Counsel for the Commissioner expresses a different view. According to him, the Judge was free to assume that Dr. Chamberlain's acknowledgement of a capacity to work in two-hour blocks is equivalent to saying a claimant can maintain function with "normal breaks." In support of this perspective, counsel cited Social Security Ruling 96-9p. The Ruling is addressed to the occupational implications of having a residual functional capacity for less than the full range of sedentary work. It is noted in the Ruling that a claimant who can sit for "approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals" can perform a full range of sedentary work, provided he can also stand and walk for a total of approximately two hours to round out the eight-hour day. However, if the individual can stand and walk for approximately six hours, the Ruling states that "there may be a significant number of light jobs in the national economy that he or she can do even if there are not a significant number of sedentary jobs." The Ruling offers another framework for the individual who must "alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically." According to the Ruling, "[w]here this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." If the need cannot be accommodated by normal breaks, then "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing" and

7

"[i]t may be especially useful . . . to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p, 1996 WL 374185, *7, 1996 SSR Lexis 6, *17-19 (July 2, 1996).

Based on Ruling 96-9p, a claimant who is able to work within the parameters of having breaks in two-hour increments, sitting for a total of six hours, and standing or walking for a total of two hours, can be presumed able to adjust to sedentary work existing in substantial numbers, absent other limitations. This means that the Commissioner would not have to rely on a vocational expert at step 5 of the sequential evaluation process in order to determine that a successful transition to sedentary work is possible, but could make that decision based on application of the Commissioner's Medical Vocation Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, more commonly referred to as "the Grid."

Given this regulatory background, I agree with the Commissioner that, in many cases, an Administrative Law Judge might well pass over an opinion stating that a claimant can maintain function in two-hour blocks of sustained activity, without error, particularly in the context of cases involving sedentary work. A two-hour block comment could well be insignificant in other cases as well, based on the "normal break" assumption inherent in the Commissioner's regulations, rulings, and forms. However, the two-hour block concept does not appear to be enshrined in the Commissioner's regulations and rulings, except when it comes to a grid determination associated with sedentary work and physical restrictions that correspond with, essentially, the full range of jobs in that category. Consequently, there may well be cases in which a two-hour

block assessment will need to be addressed by an adjudicator. For example, this District has found "two-hour block" restrictions to be significant in some cases, albeit cases involving mental impairments that are not present here.[2]

In this case it is not necessary to split hairs over the question because the Court is not addressing a step 5 decision based on application of the Grid. Additionally, the RFC finding made by the Judge sufficiently accounts for Dr. Chamberlain's note by accounting for normal breaks and by calling for an occupation that allows for a sit/stand option and would not require Hardin to sustain either posture for more than one hour. By comparison, Dr. Chamberlain's assessment is that Hardin could maintain a seated posture or an erect posture for two-hour blocks without experiencing disabling chronic pain. In this particular context, the Judge's failure to incorporate or explain away Dr. Chamberlain's two-hour block note does not undermine the Judge's RFC finding at Step 4 and his failure to question the vocational expert about the relationship between two-hour blocks and normal breaks did not give rise to independent error at Step 5.

### 2. *The "should be up and be walking" comment*

The second allegedly overlooked restriction relates to the hearing testimony of Dr. Peter Webber, whom the Judge called as a medical expert at hearing to assist with his disability determination. At the hearing, the Judge asked Dr. Webber whether Hardin's edema would be of concern in relation to sitting for extended periods. (R. 53.) Dr.

---

[2] Conley v. Astrue, Civ. No. 08-202-P-S, 2009 U.S. Dist. LEXIS 7658, *5-6, 2009 WL 214557, *2-3 (D. Me. Jan. 28, 2009); Bartlett v. Barnhart, Civ. No. 05-23-B-W, 2005 U.S. Dist. LEXIS 16330, *12, 2005 WL 1923518, *4 (D. Me. Aug. 9, 2005); see also Prescott v. Astrue, Civ. No. 09-23-B-W, 2009 U.S. Dist. LEXIS 94783, *10 , 2009 WL 3148731, *3 (D. Me. Sept. 30, 2009) (describing a 2-hour block limitation on attention span as a "significant further limitation" that could foreclose reliance on the Grid).

9

Webber responded as follows:

> Well, he should be up and be walking. Anybody who has edema we would expect them to be walking, because sedentary, remaining sitting, aggravates edema. So that probably the less sitting, the better. If he had to do something, I guess he would have to lie down to minimize the edema, or be up and walking.

(R. 53-54.) The Judge excused Dr. Webber as a witness after this testimony. (R. 54.) In his decision, the Judge construed Dr. Webber's testimony as follows: "Dr. Webber's opinion that the claimant should avoid extended periods of sitting is accepted and is incorporated into the residual functional capacity assessment." (R. 16.) Hardin says this is an inaccurate characterization of Dr. Webber's testimony and that the Judge committed error by failing to quantify the extent to which Hardin would need to alternate between sitting and standing and by failing to tell the vocational expert that Hardin would need an occupation that enabled him to walk. (Statement of Errors at 7.) Hardin observes that much of the light-duty occupational base will involve standing, but that the ability to walk is less common. He argues that a walking requirement should have made its way into the RFC at Step 4 and should have been proposed to the vocational expert for purposes of Step 5 to determine how it might erode the occupational base. (Id. at 9.) As for sitting, Hardin argues that it was essential for the Judge to articulate a more specific durational measure about what constitutes extended sitting. (Id. at 8.)

The Commissioner, on the other hand, argues that Dr. Webber's testimony about walking being good for someone with edema is not even an RFC assessment. The Commissioner's position is that the physical residual functional capacity assessments of Dr. Trumbull and Dr. Chamberlain provide a substantial evidentiary basis for finding that

Hardin could sit six hours out of the day and that he could stand and/or walk for six hours, and that Dr. Webber's opinion testimony would not, in any event, compel a finding that Hardin must have a job that entails walking as opposed to standing.

On this record, the Commissioner has the better of this argument, too. The claimant bears the burden of proving a specific need to alternate sitting and standing and any essential timetable for doing so as part of the claimant's residual functional capacity presentation. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).[3] Dr. Webber's commentary about how best to manage edema does not compel a finding that Hardin must work in an occupation that primarily will have him walking. Far more persuasively, Dr. Webber's testimony indicated that Hardin should avoid prolonged sitting. The Judge accepted this view and his residual functional capacity finding accounts for it by calling for occupations with a sit/stand option.

Hardin's citation to SSR 83-10 does not call for a different conclusion. As the Ruling indicates: "Relatively few unskilled light jobs are performed in a seated position." SSR 83-10, 1983 WL 31251, *5, 1983 SSR Lexis 30, *14. At Step 5 the Judge appropriately sought to determine if a light job could be identified by the vocational expert, but the RFC did not rule out an occupation classified as sedentary that would provide the sit/stand option. Hardin's reference to SSR 83-12 is also instructive, but it indicates merely that application of the Grid is out of the question. SSR 83-12, 1983 WL 31253, *4, 1983 SSR Lexis 32, *8-10 ("In cases of unusual limitation of ability to sit

---

[3] See, e.g., Levesque v. Astrue, Civ. No. 09-331-B-W, 2010 WL 2076013, *4, 2010 U.S. Dist. Lexis 61446, *9-12 (D. Me. May 20, 2010).

11

or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base."). If the Judge supplied the vocational expert with an appropriate hypothetical, and the vocational expert identified a job with a sit/stand option existing in significant numbers in the economy, then this issue will survive review at Step 5.

### 3. *Past relevant work*

Hardin argues that the Administrative Law Judge erred when he concluded that Hardin could perform his past relevant work as a cashier because that work, as he actually performed it, required him to stand for the entire work day. (Statement of Errors at 10-11.) However, at Step 4 Hardin bears the burden of proving that his impairments prevent him from performing his past "type" of work, not merely a particular job. Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985). At the hearing, the Judge conveyed an appropriate RFC hypothetical to the vocational expert, who testified that someone with that RFC could perform the occupation of cashier (DOT # 211.462-010) as generally performed in the economy. (R. 56-57.) This finding could terminate review, but Hardin's step 5 challenge is considered as well.

## C.  Step 5

At step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, other than the claimant's past relevant work. 20 C.F.R. §§ 404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). This burden shift is limited to producing substantial evidence that a reasonable mind would accept as adequate to demonstrate the existence of

other work the claimant can do. The Commissioner must prove that the claimant's RFC, age, education, and work experience enable the performance of other substantial work, but the Commissioner does not assume any burden to prove the non-existence of limitations that might foreclose other work. It is the claimant's burden of production and persuasion at Step 4 to prove all relevant limitations concerning residual functional capacity. 68 Fed. Reg. 51,153, 51,155; see also id. at 51,157 ("[W]e are not responsible for providing additional evidence of RFC or for making another RFC assessment at step 5. [W]e use the same RFC assessment at step 5 that we made before we considered . . . step 4, a point in our process at which you have the burdens of production and persuasion."); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2) (same); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (following Commissioner's regulatory assignment of burdens); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.") (citing Yuckert, 482 U.S. at 146 n.5 (stating that the claimant is in the better position to provide information about his or her own medical condition)).

Ordinarily, the Commissioner will meet the Step 5 burden, or not, "by relying on the testimony of a vocational expert" in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC.

Id.

At Step 5, Hardin reiterates the arguments already discussed in relation to Step 4. In addition, he complains about the vocational expert's and the Administrative Law Judge's treatment of, or failure to address, certain job parameters set out in the Dictionary of Occupational Titles (DOT). At oral argument, the Commissioner's counsel conceded that two jobs identified by the vocational expert (personal care assistant and ticket seller) could not satisfy the Commissioner's burden given the state of the record. This leaves document preparer and the cashier occupation already discussed. The testimony concerning the cashier position indicates over 6,000 regional jobs and over a million nationally. (R. 58.) With respect to document preparer (DOT # 249.587-018),[4] the numbers are 600 and 144,000, respectively. According to the vocational expert, the document preparer occupation accommodates a sit/stand option "quite well." (R. 62.) Hardin does not disagree, but complains that both cashiering and document preparation call for reaching in excess of his limitations. However, the RFC finding simply restricts overhead reaching to "occasional." (Finding 5, R. 13.) This limitation was conveyed to the vocational expert (R. 57) and did not prevent him from identifying the document preparer occupation. The vocational expert's testimony is substantial evidence in support of the Judge's step 5 finding.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the

---

[4] The vocational expert provided the correct DOT code (R. 59), but the Judge transcribed it incorrectly in his decision (R. 18).

14

Court affirm the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 28, 2010